IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Claude E. Lydia, | ) | C/A No.: 1:11-23-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Ms. Henderson, Officer; Ms. Luna, Officer; Ms. Blackwell, Officer; Mr. Lemmons, Officer, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se* and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee incarcerated at Cherokee County Detention Center ("CCDC"). Plaintiff names employees of CCDC as Defendants. This matter is before the court on the following motions: (1) Plaintiff's Motion for a Preliminary Injunction [Entry #57]; and (2) Defendants' Motion for Summary Judgment [Entry #63]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

Plaintiff alleges he was assigned to the B-unit of CCDC. Compl. at 2 [Entry #68-1].[1] According to his complaint, on November 15, 2010, Plaintiff informed Defendant Luna that

---

[1] Plaintiff's first amended complaint contains the relevant factual allegations and is incorporated into the Second Amended Complaint by reference. *See* Entry #68-1. For this reason, the undersigned refers to it for ease of reference in this recitation of the facts.

he wished to be moved to another unit, that he feared for his safety, and that other inmates intended to rob him, but Luna told him the next shift would have to "take care of the problem." *Id*. Plaintiff alleges that at 4:00 a.m. on November 16, 2010, he made the same request to Defendant Lemmons. According to Plaintiff, Lemmons responded that he did not have room to move Plaintiff, but that would bring the matter to the attention of his supervisor, Defendant Blackwell. Plaintiff alleges that an hour later he informed Defendant Henderson that he feared for his safety and that other inmates intended to beat and rob him. Additionally, he alleges that he asked Henderson to ask Blackwell to come speak with him. According to Plaintiff, Henderson indicated at sometime between 5:30 and 6:00 a.m. that she had relayed Plaintiff's request to Blackwell, but Plaintiff alleges Blackwell did not respond. Plaintiff alleges he was attacked in the restroom at approximately 7:00 a.m., and was rendered unconscious and left on the bathroom floor. Compl. at 2–3 [Entry #68-1]. When he awoke, Plaintiff claims that the assailant threatened him if he called for help. *Id*. According to the complaint, Supervisor Kenny Brown halted the assaults and took Plaintiff to the CCDC nurse, who determined he needed emergency medical attention. Compl. at 3 [Entry #68-1]. Plaintiff was transferred to Upstate Carolina Medical Center early that afternoon. *Id*.

The x-rays revealed a fractured jaw and facial bone fracture. *Id*. Plaintiff alleges the hospital referred him to Dr. Foster,[2] a doctor in Boiling Springs, SC for follow-up care. *Id*. According to the complaint, Plaintiff did not receive pain medication, but received Tylenol

---

[2] Although Plaintiff's complaint refers to the Doctor as Ruckers, in Defendants' summary judgment motion and Plaintiff's response, the doctor is referred to as Dr. Foster.

2

when he returned to CCDC. On November 19, 2010, Plaintiff was seen by Dr. Foster, who determined that Plaintiff required surgery. *Id.* Plaintiff was transferred to the custody of the South Carolina Department of Corrections ("SCDC") on November 22, 2010. *Id.* He alleges that although he informed the medical staff of his fractured facial bone and jaw, he received no medical treatment save for "rudimentary examinations." *Id*. Plaintiff's operation was scheduled for late December 2010. *Id.*

Defendants filed their motion for summary judgment on July 20, 2011. [Entry #63]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #64]. Plaintiff filed a timely response in opposition to Defendants' motion on August 25, 2011 [Entry #51], Defendants filed a reply [Entry #74], and Plaintiff filed a sur-reply [Entry #75]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion for summary judgment in part and denying it in part. Plaintiff filed a motion for a preliminary injunction [Entry #57] on July 7, 2011, and Defendants filed a response [Entry #59] on July 14, 2011. It is recommended that Plaintiff's motion for a preliminary injunction be denied as moot.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter

3

of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.   Analysis

1.   Fourteenth Amendment Review

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) and *Hill*, 979 F.2d at 991–92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are

5

essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill*, 979 F.2d at 991; *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

2.  Exhaustion of Administrative Remedies

Defendants claim that Plaintiff's suit is barred because he has not first exhausted his administrative remedies through the grievance procedure. [Entry #63-1 at 14]. Specifically, Defendants claim that Plaintiff "would have been provided with an inmate handbook which would explain the CCDC grievance procedure." *Id.* Plaintiff argues that he never received a handbook and Defendants have failed to provide any documentation evidencing the same. Additionally, Plaintiff avers that he he informed Officer Crocker that he wanted to "'file paper work' against [CCDC] for allowing other inmates to rob and beat me," but that Officer Crocker denied his request for forms to file a lawsuit or complaint. [Entry #73-2].

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, "when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523,

6

529 (3d Cir. 2003) (holding that district court erred in failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms). Therefore, the court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). An inmate's failure to exhaust administrative remedies is an affirmative defense, and defendants, therefore, have the burden of proof to demonstrate an inmate's failure to exhaust administrative remedies. *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005) ("An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant."). Therefore, because Defendants have the burden of proving Plaintiff failed to exhaust his administrative remedies and have failed to prove that the administrative remedies were made available to Plaintiff, the undersigned submits that Defendants are not entitled to summary judgment on this ground.

        3.      Eleventh Amendment Immunity

Defendants argue that they are entitled to sovereign immunity pursuant to the Eleventh Amendment to the extent they are sued in their official capacity. The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Under the Eleventh Amendment, . . . neither a State nor its officials in

their official capacity may be sued for damages in federal court without their consent." *Gamache v. Cavanaugh*, 82 F.3d 410, 1996 WL 174623 at *1 (4th Cir. 1996). The Supreme Court has held that "it has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agencies and state instrumentalities." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). To the extent that Plaintiff is suing Defendants in their official capacity for damages, they are entitled to summary judgment and cannot constitute "person[s]" under § 1983 in that capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Gulledge v. Smart*, 691 F.Supp. 947, 954–55 (D.S.C. 1988) (holding sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities). Therefore, Defendants are entitled to summary judgment to the extent they are sued for monetary damages in their official capacity, as such claims are not cognizable in federal court.

    4.    Failure to Protect

Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or

8

should have known of a substantial risk of serious harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, there is a dispute of fact as to whether Plaintiff informed Defendants that he was requesting to be moved because he had overheard other inmates plan to attack him and he feared for his safety. Plaintiff alleges in his sworn affidavit that he informed Defendants of the reason for his request to be moved [Entry #73-2], while Defendants aver that they were either not informed of the reason for the request [Entry #63-4, #63-5] or they were not aware of the request [Entry #63-6, #63-7]. Because the issue of whether Defendants were aware that Plaintiff faced a substantial risk of serious harm is a material fact in this case, summary judgment is not appropriate, and it is recommended that Defendants' motion for summary judgment be denied as to Plaintiff's failure to protect claim.

        5.        Deliberate Indifference to Serious Medical Needs

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by

> the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the Court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Additionally, the *Miltier* court found that prison staff are justified in relying in the medical staff's professional medical opinion regarding the appropriate medical treatment of inmates at the detention center. *See generally, Miltier*, *supra*.

In *Farmer v. Brennan*, the Supreme Court clarified that an officer must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). Additionally, the *Farmer* court noted that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" and that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Additionally, the law is clear that disagreements between an inmate and medical providers does not amount to a constitutional violation. *See generally, Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Jackson v. Fair*, 846 F.2d 811 (1st Cir. 1988).

The Fourth Circuit has decided that there is "no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). However, the *Bowring* court also noted that "[t]he right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." 551 F.2d at 47–48. The court further cautioned:

> In so holding, we disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion.

*Bowring*, 551 F.2d at 48.

Plaintiff's claim for deliberate indifference regarding his medical care is based on his claims that: (1) he should have been transported to the emergency room earlier; (2) he should have received pain medication earlier; and (3) he should not have been transferred to SCDC custody prior to his surgery. *See* Pl.'s Resp. at 12–13 [Entry #73]. Plaintiff alleges that he was attacked between 6:30 and 7:00 a.m., but that he was not taken to the emergency room until 1:45 p.m., and complains that he was interviewed at CCDC before he was transported. *Id.* at 11. Additionally, Plaintiff claims that his medicine was prescribed around 5:30 p.m. on November 16, but was not administered until 9:00 a.m. on November 17. *Id.* at 13. In so alleging, Plaintiff admits that his affidavit submitted to the court alleges he never received pain medication. *Id.* According to his brief, he believed that he had not received pain medication because the pain did not decrease when the medicine was administered. *Id.* at 14. Finally, Plaintiff claims that his transfer to SCDC custody constitutes an interference with his treatment and further delayed his surgery. *Id.* at 13.

Plaintiff has failed to set forth evidence constituting a cause of action for deliberate indifference to his serious medical needs. When Defendants found Plaintiff around 8:00 a.m., he was immediately taken to the CCDC nurse, who found that he needed emergency care. Although it appears a few hours[3] passed between the nurse's decision and Plaintiff's transport to the hospital, there is no evidence that this delay caused Plaintiff any greater pain or left him in a worse medical condition. Although Plaintiff argues that the delay prolonged his pain because he was not given pain medication until the following morning, he also

---

[3] It is not clear what time the nurse's decision was made.

admits that he could not differentiate between the pain he experienced before receiving his medication and after his medication.[4]  Additionally, the undersigned finds unsubstantiated Plaintiff's claim that his transfer to SCDC custody constitutes Defendants' interference with his medical care.  Plaintiff has not shown that Defendants had control over whether to transfer Plaintiff or had any reason to believe that his transfer would delay his medical care.  Therefore, because Plaintiff has failed to provide evidence to support his claims that Defendants were deliberately indifferent to his serious medical needs, Defendants are entitled to summary judgment on this claim.

      6.      Plaintiff's Motion for A Preliminary Injunction

Plaintiff's motion for a preliminary injunction concerns alleged harassment he received while temporarily housed at CCDC from June 23, 2011 until June 28, 2011. [Entry #57]. Because Plaintiff was transferred back to SCDC custody at MacDougall Correctional Institution where he has remained since, it appears Plaintiff's request for injunctive relief is now moot.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment [Entry #63] be granted as to Plaintiff's claim of medical indifference and denied as to Plaintiff's failure to protect claim to the extent he sues Defendants in their personal

---

[4] Although it is not clear, there is no indication that the hospital medical professionals provided, or found it necessary to provide, Plaintiff immediate pain medication during the time he was in their care.

capacities. Additionally, it is recommended Plaintiff's motion for a preliminary injunction [Entry #57] be denied as moot.

    IT IS SO RECOMMENDED.

October 24, 2011                                      Shiva V. Hodges
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**